SCUTTI ENTERPRISES, LLC,
Plaintiff–Appellant,

v.

PARK PLACE ENTERTAINMENT CORPORATION, Park Place Akwes-asne Consulting Corp., Defendants–Appellees.

No. 05–4959.

United States Court of Appeals,
Second Circuit.

March 22, 2006.

David L. Rasmussen, Lacy Katzen LLP (Glenn M. Fjermedal, on the brief), Rochester, NY, for Plaintiff–Appellant.

George F. Carpinello, Boies, Schiller & Flexner, LLP (Martin Deptula, Boies, Schiller & Flexner, LLP, on the brief; Harold A. Kurland, Ward Norris Heller & Reidy LLP, Rochester, NY, on the brief), Albany, NY, for Defendants–Appellants.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. REENA RAGGI, Circuit Judges, and Hon. MIRIAM GOLDMAN CEDARBAUM, District Judge.*

* The Honorable Miriam Goldman Cedarbaum, United States District Judge for the Southern District of New York, sitting by designation.

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the United States District Court for the Western District of New York (Telesca, J.) is **AFFIRMED.**

In *Scutti Enterprises, LLC v. Park Place Entertainment Corporation*, 322 F.3d 211, 217 (2d Cir.2003), we vacated the district court's judgment dismissing Scutti Enterprises' claim of tortious interference with business relations, holding that "[a]lthough the VLT limitation appears to be related to the business in which Park Place and Scutti compete, i.e., gaming and casinos, it is not beyond doubt that Scutti could demonstrate that Park Place's loan offer, which induced the Mohawk's agreement to the limitation, was economic pressure unrelated to that business, and was wrongfully aimed at extinguishing Scutti's relationship with the Mohawks." On remand, the district court found that the loan offer and corresponding video lottery terminal ("VLT") limitation were related to the gaming and casino business and granted Park Place's motion for summary judgment on this question. We assume the parties' familiarity with the facts of this case, its relevant procedural history, and the issues on appeal.

We review a district court's grant of summary judgment *de novo. Ballow Brasted O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 238 (2d Cir.2006). To state a claim for tortious interference with prospective business relations under New York law, the plaintiff must generally show, *inter alia*, that "the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means." *Scutti*, 322 F.3d at 215. In *Scutti*, we reiterated the principle that "some degrees of economic pressure" satisfy this prong of the test for tortious interference; for instance, "economic pressure on the third person in matters unrelated to the business in which actor and the other compete is treated as an improper interference." *Id.* at 216 (citation and internal quotation marks omitted). Subsequent to our remand, the New York Court of Appeals clarified that, as a general rule, allegations that a defendant has improperly applied economic pressure to a third party are not enough to make out a claim of tortious interference with prospective business relations unless that pressure amounts to "a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362, 818 N.E.2d 1100 (2004). The Court of Appeals has recognized an exception to this rule "where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Id.* (citation and internal quotation marks omitted).

Scutti argues that by the time Park Place made its loan offer to the Tribe, it had concluded that the loan was a bad and unnecessary investment, and that its "only true intent [in entering the March 22, 2001 loan agreement] was to preserve its exclusivity with the Mohawks with respect to the development of a potential casino in Sullivan County, New York." Park Place readily concedes that it had no interest in investing in the Akwesasne Casino and that its offer to loan the Tribe $6–9 million for refurbishing the Akwesasne Casino was intended to secure development rights for a casino in Sullivan County.[1] Scutti's arguments that Park Place had no independent business interest in the Akwes-

---

1. Scutti argues that Park Place concluded in December 2000 that the loan was unnecessary because the Akwesasne Casino "was breaking even or moderately profitable." The December 2000 Park Place memorandum Scutti cites for this proposition, however, explicitly states that although "the property should be able to break even on an annual run basis[,][g]oing forward [Park Place] will most likely have to advance to the Tribe an

asne Casino and did not consider Scutti a serious rival in the New York gaming industry are therefore inapposite. Park Place's desire to gain favor with the Tribe and secure development rights for a casino in Sullivan County—which the parties agree motivated Park Place's offer to loan the Tribe money for the Akwesasne Casino—establishes that the loan offer was made in connection with Park Place's legitimate business interests in the gaming industry.

Scutti further argues that the 127 VLT restriction placed on the Bingo Palace by the "Business Turn–Around and Consulting Agreement" had no relation to Park Place's legitimate business interests.[2] Park Place argues, however, that it conditioned its loan offer on the Mohawk's agreement to limit the number of VLTs at the Bingo Palace because, under the loan agreement, the only source for repayment of the loan would be revenues generated by the Akwesasne Casino, and an increase in the number of VLTs at the nearby Bingo Palace would necessarily siphon business away from the Akwesasne Casino. Scutti offers no evidence that Park Place conditioned its loan offer on the Tribe's agreement to a VLT limitation at the Bingo Palace for any reason other than protecting the revenue stream at the Akwesasne Casino that would enable the Tribe to repay the loan. No reasonable fact-finder, construing the evidence in the light most favorable to the plaintiff, could conclude that Park Place's loan offer and the corresponding VLT limitation were unrelated to Park Place's legitimate interests in the gaming and casino business or were motivated by anything other than legitimate business reasons. For this reason, discussed more fully by the district court, Park Place was entitled to summary judgment. *See Amnesty America v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004).

---

additional $3.3 million to cover the anticipated working capital deficit" and may be required "to fund periodic working capital deficits throughout the year." The Memorandum estimates Park Place's potential exposure in the Akwesasne Casino at $8.3 million—a figure that includes the anticipated loan and associated interest costs.

2. The March 22, 2001 Business Turn–Around and Consulting Agreement, which contained Park Place's loan offer, provided that the term of the Agreement would commence on the date when the Agreement was approved by both the New York State Racing and Wagering Board and the Tribal Gaming Commission. The record does not indicate when, if ever, these bodies approved the Agreement; thus it is not clear when, if ever, the VLT restriction became binding. On November 15, 2001, Park Place and the Tribe amended the Agreement, striking the loan offer and the corresponding VLT restriction.