■ STEVEN LAWRENCE, Respondent, v UNION OF ORTHODOX JEWISH CONGREGATIONS OF AMERICA et al., Defendants, and KEHILAH KASHRUS, INC., Appellant. [820 NYS2d 60]—

Order, Supreme Court, New York County (Jane S. Solomon, J.), entered on or about January 20, 2006, which denied defendant-appellant's motion for summary judgment dismissing plaintiff's remaining cause of action for tortious interference with business relations, unanimously reversed, on the law, without costs, the motion granted and the complaint dismissed as against defendant-appellant. The Clerk is directed to enter judgment accordingly.

Plaintiff, an employee at-will, was hired by Empire Kosher Poultry, Inc., a slaughterhouse under the kosher supervision of defendant Union of Orthodox Jewish Congregations of America, as the head supervising rabbi. Defendant-appellant Kehilah Kashrus, Inc. is a nonprofit organization of rabbis that ensures that kosher foods are prepared properly under Jewish law. Plaintiff commenced an action claiming, inter alia, that Kehilah interfered with his employment relationship with Empire by sending letters to Empire threatening a boycott of its stores if Empire did not terminate plaintiff's employment. The motion court denied Kehilah's motion to dismiss this cause of action. We reverse.

In order to recover damages for interference with existing economic relations in a nonbinding relationship, a "defendant's conduct must amount to a crime or an independent tort" (*Carvel Corp. v Noonan*, 3 NY3d 182, 190 [2004]). A sole exception to this general rule has been recognized where a defendant has engaged in conduct "for the sole purpose of inflicting intentional harm on plaintiff[ ]" (*NBT Bancorp v Fleet/Norstar Fin. Group*, 215 AD2d 990, 990 [1995], *affd* 87 NY2d 614 [1996]; *see also Carvel*, 3 NY3d at 190).

No issue of fact is raised as to whether Kehilah's conduct was either criminal or independently tortious. Indeed, the record is devoid of any evidence that Kehilah wrongfully interfered with plaintiff's employment, or that it acted for the sole purpose of inflicting harm. Plaintiff conceded at his deposition that Kehilah had made no false accusations against him. In addition, plaintiff

admitted he did not know what Kehilah's motivation was in opposing his employment. Further, neither the memo from Kehilah sent to all meat establishments directing them to cease carrying Empire products, nor its letter to the rabbinic administrator of defendant, advising that it was pleased to hear a new head supervising rabbi had been appointed, refers to plaintiff directly or indirectly. Nor does either contain any other evidence from which one may fairly infer that Kehilah was acting improperly to secure plaintiff's termination. Contrary to plaintiff's contention, the memo he claims as support does not "amount to the sort of extreme and unfair 'economic pressure' that might be 'wrongful' under *Guard-Life* [*Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183 (1980)] and *NBT* [*supra*]" (*Carvel*, 3 NY3d at 192-193; *see also Dilimetin & Dilimetin v Stein*, 297 AD2d 601 [2002]). Indeed, the record provides no ground to infer that Kehilah was not motivated by legitimate economic self-interest when it sent the memo. Finally, no triable issue is raised regarding the reason for plaintiff's termination. Kehilah submitted uncontradicted documentation that plaintiff was placed on a 60-day probation period, that he was told his management skills were deficient, and that he lacked the requisite technical skills for the job.

We need not reach Kehilah's remaining contention in light of our determination. Concur—Tom, J.P., Marlow, Nardelli and Malone, JJ.