OPINION OF THE COURT
Karla Moskowitz, J.
*777 In this action for tortious interference with prospective business relations, defendant Sirius Satellite Radio, Inc. moves for an order, pursuant to CPLR 3211 (a) (1) and (7), dismissing the complaint dated October 20, 2006 of plaintiff Advanced Global Technology LLC (AGT). For the reasons discussed below, the court grants the motion.
Background
Sirius operates a satellite radio service called Sirius Satellite Radio. Sirius “manufactures and markets satellite radio receivers designed to receive Sirius Satellite Radio transmissions” and also authorizes certain third parties to manufacture and sell receivers under the Sirius brand name that can receive transmissions from Sirius Satellite Radio. (Complaint 11 9.)
Sirius’ only rival in the satellite radio market is XM Satellite Radio. (Complaint 1T1Í 6, 7.) XM-compatible receivers are not compatible to receive Sirius satellite transmissions and vice versa.
Plaintiff AGT distributes and markets receivers designed to receive transmission of satellite radio from XM. (Complaint H 8.) AGT does not do any business for, or on behalf of, Sirius. (Id.)
Nonparty Kiryung Electronics Co. Ltd. (KRI), a Korean consumer electronics company, “is a primary manufacturer of satellite radio receivers for Sirius, with sales of Sirius-compatible radio receivers accounting for a large part of KRI’s annual sales.” (Complaint 1Í1Í10-11.)
High definition (HD) radio is a new technology that enables AM and FM stations to broadcast their programming digitally and provides improved sound quality to listeners. (Complaint HIT 14-15.) To access HD radio, consumers simply purchase an HD receiver. Unlike satellite radio, customers do not need a subscription to an HD provider.
On or about August 16, 2006, plaintiff AGT approached KRI to develop a receiver capable of receiving HD radio. AGT and KRI thereafter entered into negotiations for this prospective HD receiver venture. For example, AGT and KRI met in Seoul, Korea, developed and presented proposed design concepts, system configurations and pricing specifications, and agreed to move forward with the venture. (Complaint 1Í1Í19-22.) However, on September 26, 2006, H. J. Kwon, the chief executive officer of KRI, sent an e-mail to AGT executives ending contract negotiations between the two companies. Kwon indicated in the e-mail that Sirius informed KRI that, in light of AGT’s relation *778 ship with XM, Sirius was not in favor of KRI and AGT having a business relationship. (Complaint Iff 23, 25.) The e-mail stated, in pertinent part:
“I have to share my personal concern with you very frankly. For the time being, I was out of communication circle, so I had no chance to have a in-depth discussion regarding my concern.
“As you are well aware, our main trunk of biz is Sirius radio. Since your team was spun off from USE with XM biz, Sirius have been giving some alert warning for KRI not to have any biz with AGT even [if] it is not satellite radio biz. Until the total situation turns around to us better, we should be very much careful to have a biz with AGT directly. I hope you to understand me in such shoes. I do not like to repeat same mistake like before!
“I am so sorry that I can not accept such aggressive good proposal at this moment, but I believe that you are fully aware of my concern.”
AGT commenced this action against Sirius on October 20, 2006, asserting only one cause of action — tortious interference with prospective business relations. The complaint states, in relevant part:
“29. As alleged above, AGT reasonably expected to enter into a business relationship with KRI for the development and manufacture of an HD Radio receiver. Sirius was aware of this business opportunity.
“30. Sirius intentionally interfered with AGT’s business opportunity by prohibiting KRI from having a business relationship with AGT.
“31. Sirius’ motivation in interfering with AGT’s relationship with KRI was to harm AGT and prevent the company from developing an HD Radio receiver.
“32. As Sirius had no HD Radio receiver of its own, it is evident that Sirius acted without justification, entirely out of malice and was not motivated by normal economic self-interest.
“33. As a result of Sirius’ conduct, AGT was prevented from consummating a contract with KRI.
“34. Sirius’ tortious interference has caused AGT to suffer pecuniary damages.”
*779 Discussion
The required elements of a cause of action for tortious interference with prospective business relations are as follows: (a) business relations with a third party; (b) the defendant’s interference with those business relations; (c) the defendant acting with the sole purpose of harming the plaintiff or using wrongful means; and (d) injury to the business relationship. (See Guard-Life Corp. v Parker Hardware Mfg. Corp., 50 NY2d 183 [1980]; Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]; NBT Bancorp v Fleet/Norstar Fin. Group, 87 NY2d 614 [1996].)
“To state a cause of action for tortious interference with prospective business advantage, it must be alleged that the conduct by defendant that allegedly interfered with plaintiffs prospects either was undertaken for the sole purpose of harming plaintiff, or that such conduct was wrongful or improper independent of the interference allegedly caused thereby.” (Jacobs v Continuum Health Partners, 7 AD3d 312, 313 [1st Dept 2004], citing Alexander & Alexander of N.Y. v Fritzen, 68 NY2d 968, 969 [1986].)
“Wrongful means” include “physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract.” (Guard-Life Corp. v Parker Hardware Mfg. Corp., supra, 50 NY2d at 191.) Because simple economic “persuasion” does not qualify as wrongful means (id.), for economic pressure to be wrongful, it must be “extreme and unfair” (Carvel Corp. v Noonan, supra at 192).
The parties are in agreement that this motion turns on whether the complaint adequately pleads facts satisfying the third required element of the cause of action for tortious interference with prospective business relations — that Sirius acted with “wrongful means” or for the “sole purpose of harming AGT.” Thus, the inquiry focuses on whether it is actionable if Sirius instructed KRI not to do business with AGT (in the HD sector of the radio business), because AGT distributes radios for XM (in the satellite sector of the radio business).
The Court of Appeals, in Carvel, grappled with the third prong of tortious interference with prospective business relations, specifically the issue of harming plaintiff and the role of competition in eliminating “the sole purpose of harming plaintiff” as *780 a basis for the claim. After summarizing its holdings in Guard-Life and NBT Bancorp and reaffirming the rule that, for conduct to be actionable, it generally must amount to a crime or an independent tort, the Court of Appeals considered the role of competition in the tort. The Court of Appeals stated:
“The existence of competition may often be relevant, since it provides an obvious motive for defendant’s interference other than a desire to injure the plaintiff; competition, by definition, interferes with someone else’s economic relations. Where the parties are not competitors, there may be a stronger case that the defendant’s interference with the plaintiffs relationships was motivated by spite. But as long as the defendant is motivated by legitimate economic self-interest, it should not matter if the parties are or are not competitors in the same marketplace.” (Carvel Corp. v Noonan, 3 NY3d at 191.)
Similarly, in Lawrence v Union of Orthodox Jewish Congregations of Am. (32 AD3d 304, 304 [1st Dept 2006]), the First Department explained:
“In order to recover damages for interference with existing economic relations in a nonbinding relationship, a ‘defendant’s conduct must amount to a crime or an independent tort’ (Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]). A sole exception to this general rule has been recognized where a defendant has engaged in conduct ‘for the sole purpose of inflicting intentional harm on plaintiff! ]’ (NBT Bancorp v Fleet/Norstar Fin. Group, 215 AD2d 990, 990 [1995], affd 87 NY2d 614 [1996]; see also Carvel, 3 NY3d at 190).”
In its opposition, AGT relies on the United States Court of Appeals 2003 decision in Scutti Enters., LLC v Park Place Entertainment Corp. (322 F3d 211 [2d Cir 2003]) as support for the proposition that “New York law requires that for economic persuasion that interferes with an alleged competitor’s business relations to withstand challenge as tortious, the interference must relate to the business in which they compete.” (AGT mem of law at 9.) AGT interprets this to mean that Sirius can avoid liability for tortious interference with prospective business relations here only if Sirius and AGT are direct competitors in the exact same market. AGT reasons that, because Sirius and AGT do not directly compete in the HD receiver market, Sirius may *781 not claim that its alleged actions were economically motivated and therefore Sirius’ alleged interference with AGT’s prospective contractual relations with KRI was solely motivated by unlawful malice. AGT further submits that issues of fact exist with respect to: (a) the interpretation of the e-mail; (b) whether AGT and Sirius are competitors in the same market; (c) whether Sirius’ conduct amounted to mere persuasion or unlawful coercion; and (d) whether Sirius’ actions were based on legitimate self-interest or solely motivated by unlawful malice.
AGT’s interpretation of the applicable law is incorrect. The New York Court of Appeals decision in Carvel governs here, and, to the extent that the United States Court of Appeals decision in Scutti compels a different conclusion, it is not controlling. Even though Sirius and AGT do not compete directly in the HD sector of the radio industry, competition remains the motivating factor in Sirius’ alleged conduct because of XM.
Kwon’s e-mail here, including the language “[s]ince your team was spun off from USE with XM biz,” demonstrates that Sirius’ concern about its manufacturer doing business with a business closely aligned with its competitor, XM, motivated Sirius’ action. This language contradicts AGT’s assertion that “Sirius acted without justification, entirely out of malice and was not motivated by normal economic self-interest” (complaint 1i 32) and instead supports the conclusion that a “legitimate economic self-interest” motivated Sirius’ actions. Under Carvel, it does not matter that Sirius and AGT are not competitors in the exact same marketplace.
Moreover, in 2006, the United States Court of Appeals recognized, in an appeal, after remand, in the Scutti case, that the Carvel decision limited its 2003 decision. The federal court stated:
“To state a claim for tortious interference with prospective business relations under New York law, the plaintiff must generally show, inter alia, that ‘the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means.’ Scutti, 322 F.3d at 215. In Scutti, we reiterated the principle that ‘some degrees of economic pressure’ satisfy this prong of the test for tortious interference; for instance, ‘economic pressure on the third person in matters unrelated to the business in which actor and the other compete is treated as an improper interference.’ Id. at 216 (citation and internal quota *782 tion marks omitted). Subsequent to our remand, the New York Court of Appeals clarified that, as a general rule, allegations that a defendant has improperly applied economic pressure to a third party are not enough to make out a claim of tortious interference with prospective business relations unless that pressure amounts to ‘a crime or an independent tort.’ Carvel Corp. v Noonan, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362, 818 N.E.2d 1100 (2004). The Court of Appeals has recognized an exception to this rule ‘where a defendant engages in conduct for the sole purpose of inflicting intentional harm on plaintiffs.’ Id. (citation and internal quotation marks omitted).” (Scutti Enters., LLC v Park Place Entertainment Corp., 173 Fed Appx 75, 76 [2d Cir 2006].)
Applying this standard, the Scutti court affirmed the grant of summary judgment in the defendant’s favor, noting that “[n]o reasonable fact-finder, construing the evidence in the light most favorable to the plaintiff, could conclude that [the defendant’s actions] were unrelated to [the defendant’s] legitimate interests in the gaming and casino business or were motivated by anything other than legitimate business reasons.” (Id. at 77.)
Here, the complaint fails to satisfy the pleading requirements for stating a claim for tortious interference with prospective business relations based on alleged economic pressure. (Carvel Corp. v Noonan, supra.) AGT’s assertion that Sirius acted “without justification, entirely out of malice” and “not motivated by normal economic self-interest” (complaint 11 32) is conclusory and belied by the facts. (See Carvel Corp. v Noonan, supra; Lawrence v Union of Orthodox Jewish Congregations of Am., supra; Jacobs v Continuum Health Partners, supra.) AGT therefore fails to plead either intentional harm or wrongful means. That is, AGT cannot allege that the sole purpose of Sirius’ actions was a desire to inflict intentional harm on the plaintiff. Nor can AGT properly allege that Sirius’ conduct amounted to a crime or an independent tort or that the means Sirius utilized was sufficiently “extreme and unfair” so as to constitute “wrongful means.” (Id.; Guard-Life Corp. v Parker Hardware Mfg. Corp., supra; see also Cerberus Capital Mgt., L.P. v Snelling & Snelling, Inc., 12 Misc 3d 1187[A], 2005 NY Slip Op 52312[U] [Sup Ct, NY County 2005, Moskowitz, J.].)
The allegations and the documentary evidence, including the language of the e-mail itself, confirm that economic self-interest *783 motivated Sirius’ conduct, at least in part, and, thus, AGT cannot assert that Sirius acted solely out of malice. (See Jacobs v Continuum Health Partners, supra; see also Carvel Corp. v Noonan, supra; Lawrence v Union of Orthodox Jewish Congregations of Am., supra; Scutti Enters., LLC v Park Place Entertainment Corp., supra.) AGT therefore cannot state a claim for tortious interference with prospective business relations. Accordingly, the motion to dismiss is granted.
AGT’s informal request for leave to amend, without either a formal notice of cross motion or an affidavit of merit or a proposed amended complaint is denied as amendment would be futile. (CPLR 3211 [e].)
Conclusion
It is ordered that the motion by defendant Sirius Satellite Radio to dismiss the complaint is granted and the complaint is dismissed with costs and disbursements to defendant as taxed by the Clerk of the Court upon the submission of an appropriate bill of costs.