*800 OPINION OF THE COURT
Gerald E. Loehr, J.
Progressive is among the largest automobile insurers in the United States with a large presence in this state. Plaintiff is an automobile repair shop in Westchester County.[1] 2Plaintiff specializes in high-end vehicle repair, particularly foreign vehicles, and tends to be more expensive than other shops. In or about 2000, Progressive created a Direct Repair Program (DRP), a network of repair shops with which Progressive had contractual arrangements concerning the costs and terms of repairs. Where the work is done at a DRP shop, Progressive guaranties the work. Progressive advertised the DRP and discussed its asserted advantages over nonparticipating repair shops with its insureds. The scope of the DRP may be illustrated by the evidence that in 2006, Progressive spent $1.45 billion on DRP repairs and $1.65 billion on non-DRP repairs.
On February 16, 2007, plaintiff commenced this proceeding. As originally filed, the complaint asserted eight causes of action: (1) violation of General Business Law § 349; (2) violation of Insurance Law § 260if[2] (3) common-law fraud; (4) negligent misrepresentation; (5) tortious interference with prospective business advantage; (6) injurious falsehood; (7) prima facie tort; and (8) punitive damages. In response to the defendants’ motion to dismiss for a failure to state a cause of action, plaintiff withdrew the seventh and eighth causes of action. By a decision and order dated June 26, 2007, this court dismissed the second, third and fourth causes of action. The section 2601 claim was dismissed as the Legislature did not provide a private cause of action for its violation (see Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603 [1994]). The fraud and negligent misrepresentation claims were dismissed as no misrepresentations were made to, or relied upon, by plaintiff. Thus, what remains before the *801 court is the section 349 claim against Progressive and. the tortious interference and injurious falsehood claims against all the defendants.
The gravamen of the claims is that Progressive, through its employees (the individual defendants) steered its insureds to the DRP shops and away from plaintiff by means of deceptive, misleading and untrue statements which disparaged plaintiff. A trial readiness order was issued on September 15, 2010. Progressive timely moves for summary judgment dismissing the section 349 claim and plaintiff timely moves for summary judgment as to liability with respect to such claim.
General Business Law § 349 (a) declares unlawful “[deceptive acts or practices in the conduct of any business” and was enacted in order to protect consumers from misleading advertizing (see Small v Lorillard Tobacco Co., 94 NY2d 43, 55 [1999]). As originally enacted, the statute was enforceable only by the Attorney General. In 1980, however, the statute was amended to provide a private right of action to “any person who has been injured by reason of’ such illegal conduct (see General Business Law § 349 [h] [emphasis added]; City of New York v SmokesSpirits.Com, Inc., 12 NY3d 616, 621 [2009]). To establish Progressive’s liability under section 349 (h), plaintiff must establish Progressive has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that plaintiff has suffered injury as a result of the deceptive act or practice (id.). On one hand, intent to defraud by Progressive and justifiable reliance by the plaintiff are not required (Small v Lorillard Tobacco Co., 94 NY2d 43, 55 [1999]; Wilner v Allstate Ins. Co., 71 AD3d 155, 162 [2d Dept 2010]); on the other hand, direct, as opposed to derivative, injury is required (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 622 [2009]).
Progressive moves for summary judgment upon the grounds: (1) plaintiff cannot demonstrate the requisite broad impact on consumers at large; (2) plaintiff cannot show that any consumer to whom Progressive made an allegedly “deceptive” statement suffered any actual harm; (3) plaintiff cannot show that Progressive engaged in misleading or deceptive behavior; and (4) assuming any consumers were harmed, any injury plaintiff suffered was derivative only and therefore not actionable by plaintiff under section 349.
It is clear that misrepresentations uttered in connection with a private, business-to-business dispute do not turn the matter into a section 349 violation (see e.g. Anesthesia Assoc. of Mount *802 Kisco, LLP v Northern Westchester Hosp. Ctr., 59 AD3d 473, 480 [2d Dept 2009]; Northeast Wine Dev., LLC v Service-Universal Distribs., Inc., 23 AD3d 890, 892 [3d Dept 2005], affd 7 NY3d 871 [2006]; Canario v Gunn, 300 AD2d 332, 333 [2d Dept 2002]). On the other hand, practices by insurance companies involving routine, widespread marketing and communication with insureds, impacting the public at large, may support a cause of action under section 349 (Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 344 [1999]; Wilner v Allstate Ins. Co., 71 AD3d 155, 162 [2010]; Elacqua v Physicians’ Reciprocal Insurers, 52 AD3d 886, 888 [3d Dept 2008]).
Progressive relies on MVB Collision, Inc. v Progressive Northeastern Ins. Co. (Sup Ct, Nassau County, 2010, No. 18018/ 09) for the position that this is a private, nonconsumer business dispute and therefore not protected by section 349. Plaintiff relies on M.V.B. Collision, Inc. v Allstate Ins. Co. (728 F Supp 2d 205 [ED NY 2010]) for the contrary position. Ironically, although the cases involved the same plaintiff and apparently identical facts — facts also apparently identical to the facts herein — the courts came to different conclusions as to whether a claim under section 349 had been stated. In the two cases, the defendant insurance companies were alleged to have made disparaging misrepresentations to its insureds concerning plaintiff, a body shop, in connection with its steering of its insureds away from plaintiff to other shops.
In the Progressive case, Supreme Court dismissed. The Progressive court held that Progressive’s alleged wrongdoing was only a private contract dispute without an extensive marketing scheme or broad consumer impact. The Progressive court also held that, as the plaintiff body shop was suing the insurer of its consumer-customers, its claim was derivative only in violation of Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc. (3 NY3d 200 [2004]) and City of New York v Smokes-Spirits.Com, Inc. (12 NY3d 616, 622 [2009]) and that the only nonderivative claim plaintiff had was that of steering in violation of Insurance Law § 2601, a claim the plaintiff lacked standing to prosecute.
The United States District Court in Allstate, on apparently identical facts, held that the evidence of Allstate’s practice of steering and making misrepresentations to its insureds concerning plaintiff satisfied the consumer element of section 349 based on the number of Allstate policyholders all of whom were potential customers of plaintiff (M.V.B. Collision, Inc. v Allstate *803 Ins. Co., 728 F Supp 2d 205, 212 [2010]). As to the argument that the plaintiffs only nonderivative claim was for steering in violation of section 2601, the Allstate court held:
“When, for example, Allstate allegedly . . . steered a car away from Mid Island [by misrepresentations], not only was the customer the victim of a deceptive practice, but Mid Island also suffered a loss of business or other injury ....
“In sum, given that Mid Island’s alleged injuries [loss of business] occurred as a direct result of the alleged deceptive practices directed at consumers, its injuries were not ‘solely as a result of injuries sustained by another party.’ ” (Id. at 217-218.)
With respect to the argument that the plaintiffs cause of action was really a disguised steering claim, the Allstate court held:
“Here, by contrast, there is evidence of a ‘freestanding claim of deceptiveness’ that simply ‘happens to overlap’ with a claim under the Insurance Law .... The alleged scheme [to dissuade Allstate insureds from going to Mid Island] involved not only . . . steering but also, inter alia, alleged . . . defamatory comments ....
“In sum, because plaintiffs § 349 claim merely ‘happens to overlap’ with provisions of New York Insurance Law, it is not an improper attempt to circumvent the lack of [a] private right of action under [the] Insurance Law . . . .” (Id. at 219-220.)
This court agrees with M.V.B. Collision, Inc. v Allstate Ins. Co. (728 F Supp 2d 205 [2010]) that an insurer’s misrepresentations to its insureds as part of a broad DRP may be sufficiently consumer-oriented to state a cause of action under section 349, that the alleged loss of business resulting therefrom is direct injury and that plaintiff’s cause of action is not merely a disguised claim for steering in violation of Insurance Law § 2610.
Progressive also argues that the section 349 claim fails to state a cause of action because plaintiff cannot show that any of Progressive’s consumer-insureds were harmed by its alleged misrepresentations concerning plaintiff. This is actually another way of arguing that a business has no standing to assert a section 349 claim against a business competitor based on misrepresentations made by such competitor to consumers. Although section 349 (h) extends the right of action to “any person who has been injured by reason of any violation of this section,” case *804 law originally denied relief to nonconsumer competitors (see H2O Swimwear v Lomas, 164 AD2d 804, 806 [1st Dept 1990] [emphasis added]; see also Sarmiento v World Yacht Inc., 10 NY3d 70, 81 [2008]). In 1995, however, the Second Circuit held that, based on the language of section 349 (h), where there were misrepresentations to the public, a business competitor injured thereby had standing to assert a section 349 claim (Securitron Magnalock Corp. v Schnabolk, 65 F3d 256, 264 [2d Cir 1995]; see also M.V.B. Collision, Inc. v Allstate Ins. Co., 728 F Supp 2d 205, 218 [2010]).[3] Thereafter, in City of New York v Smokes-Spirits.Com, Inc. (12 NY3d 616, 624 n 3 [2009]), the New York Court of Appeals, in discussing Securitron, noted in dictim that “there is some legislative history supporting the position that business competitors have standing under the statute.” Based thereon,[4] this court holds that, where the other elements, including direct harm, are established, a business competitor has standing to assert a section 349 claim and may do so without proving specific harm to any consumer (Securitron Magnalock Corp. v Schnabolk, 65 F3d 256, 264 [1995]; M.V.B. Collision, Inc. v Allstate Ins. Co., 728 F Supp 2d 205, 218 [2010]; City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 624 [2009]).[5]
As to Progressive’s alleged misleading or deceptive behavior, plaintiff has submitted evidence that Progressive employees made disparaging, untrue statements to its insureds concerning plaintiff, in connection with the DRF that caused plaintiff to lose customers. The court holds that such evidence of misrepre *805 sentations, made in connection with its DRP, an established program involving billions of dollars and thousands of consumer-insureds, raises a question of fact that requires a trial as to what statements were made, their truth or falsity and/or whether deceptive and misleading, how far reaching, and the extent to which plaintiff was damaged thereby. Accordingly, Progressive’s motion and plaintiffs cross motion as to the section 349 claim are denied.
The second remaining cause of action is tortious interference with prospective business advantage. The elements of such cause of action are: (1) a prospective business relationship with a third party; (2) the defendant’s interference with that relationship; (3) undertaken with the sole purpose of harming the plaintiff or by wrongful means; and (4) causing injury to the plaintiff (Advanced Global Tech. LLC v Sirius Satellite Radio, Inc., 15 Misc 3d 776, 779 [Sup Ct, NY County 2007]; see Carvel Corp. v Noonan, 3 NY3d 182, 190 [2004]; NBT Bancorp v Fleet/ Norstar Fin. Group, 87 NY2d 614 [1996]).
All the defendants move for summary judgment dismissing this claim based on the plaintiffs asserted failure to identify those insureds, potential customers, who Progressive interfered with; and that whatever actions Progressive took with respect to plaintiffs customers were those of a competitor acting in its own economic interest, and not therefore undertaken with the sole purpose of harming plaintiff, nor by wrongful means. As indicated above (see footnote 3, supra), plaintiff and Progressive were, to all intents and purposes, business competitors and whatever actions Progressive took with respect to its insureds— plaintiffs prospective customers — were motivated by Progressive’s legitimate economic self-interest. Accordingly, in order for plaintiff to established this cause of action, it must show that Progressive interfered with specified potential customers, by wrongful means, resulting in them not employing plaintiff to repair their vehicles (Carvel Corp. v Noonan, 3 NY3d 182, 190-191 [2004]; Anesthesia Assoc. of Mount Kisco, LLP v Northern Westchester Hosp. Ctr., 59 AD3d 473, 477-478 [2009]; Advanced Global Tech. LLC v Sirius Satellite Radio, Inc., 15 Misc 3d 776 [2007]; see M.V.B. Collision, Inc. v Allstate Ins. Co., 728 F Supp 2d 205, 213-215 [2010]; Jim Mazz Auto, Inc. v Progressive Cas. Ins. Co., 2009 WL 891837, 2009 US Dist LEXIS 31945 [WD NY 2009]). Wrongful conduct is conduct that is criminal or otherwise tortious including violence, fraud or misrepresentation, civil suits and criminal prosecutions and some degree of *806 economic pressure beyond simple persuasion or is otherwise sufficiently wrongful (Carvel Corp. v Noonan, 3 NY3d 182, 191 [2004]; Snyder v Sony Music Entertainment, 252 AD2d 294, 300 [1st Dept 1999]). In response, plaintiff has submitted evidence that the following potential customers were convinced by Progressive to use DRP shops instead of plaintiff by economic coercion and misrepresentations concerning plaintiff: Joseph Stasio, Dorota Vyborna, Andrew Kramer and Drita Djeljevic. Additionally, plaintiff has submitted evidence that Progressive interfered with the Biliks’ employment of plaintiff to repair their vehicle by misrepresentations and by the commencement of an unsuccessful lawsuit against plaintiff.[6] This is sufficient to raise a question of fact for trial with respect to these identified lost customers (M.V.B. Collision, Inc. v Allstate Ins. Co., 728 F Supp 2d 205, 213-216 [2010]; Jim Mazz Auto, Inc. v Progressive Cas. Ins. Co., 2009 WL 891837, 2009 US Dist LEXIS 31945 [2009]).[7] Accordingly, Progressive’s motion to dismiss the tortious interference with prospective business claim is denied with respect to the identified lost customers.
The individual defendants, who are all employees of Progressive, move for summary judgment dismissing the complaint as against them. The individual defendants established their prima facie entitlement to summary judgment by submitting evidence in admissible form that they did not make any misrepresentations or falsehoods to any Progressive insureds concerning plaintiff. In response, plaintiff did not oppose the motion of A1 Lucette and it is granted without opposition. As to the other in *807 dividual defendants, plaintiff has submitted evidence that Nicholas Stanton made misrepresentations concerning plaintiff and the Bilik vehicle.[8] Accordingly, the motion of the individual defendants to dismiss the complaint as to them is granted except as to defendant Nicholas Stanton and is denied as to him.
The final cause of action is for injurious falsehood. The tort of injurious falsehood consists of the publication of false matter derogatory to the plaintiffs business of a kind calculated to prevent others from dealing with the plaintiffs business. The communication must have been malicious and have played a material and substantial part in inducing others not to deal with the plaintiff, with the result that special damages, in the form of lost dealings, are incurred. However, if the accusation impeaches the integrity of the plaintiff, special damages need not be shown (Drug Research Corp. v Curtis Publ. Co., 7 NY2d 435, 440 [1960]; Waste Distillation Tech. v Blasland & Bouck Engrs., 136 AD2d 633 [2d Dept 1988]). Malice means spite, ill will, or with knowledge that the statement was false or with reckless disregard of whether it was false or not (Liberman v Gelstein, 80 NY2d 429, 437-438 [1992]; Gilliam v Richard M. Greenspan, P.C., 17 AD3d 634, 635 [2d Dept 2005]). The existence of malice defeats a conditional privilege (Liberman v Gelstein, 80 NY2d 429, 436-437 [1992]).
The plaintiff has submitted evidence that Progressive uttered numerous derogatory statements to its insureds concerning plaintiff. These may be broadly sorted into three categories:
(1) plaintiff was a problem shop/difficult to deal with; (2) plaintiff overcharged/did not do good work; (3) plaintiff was a bunch of crooks. Category (1), assuming they were said, were statements of opinion, not fact, and therefore not actionable (Gilliam v Richard M. Greenspan, P.C., 17 AD3d 634 [2005]). As to categories (2) and (3), plaintiff has submitted evidence that Progressive made such derogatory statements of fact to its insureds concerning plaintiff, that they were false, and that Progressive uttered them knowing they were false or with a reckless disregard for the truth, resulting in, with respect to category (2) , plaintiff losing identified customers. With respect to category (3), as it impeached the integrity of plaintiff, special damages need not be shown. Accordingly, to the extent predicated on category (1), the complaint is dismissed as to all defendants. *808 The injurious falsehood claim is also dismissed as to all individual defendants. Progressive’s motion to dismiss the injurious falsehood claim, as to the alleged statements in categories (2) and (3), is denied.
Finally, in 2007, the New York State Insurance Department conducted an investigation into insurer’s, including Progressive’s, compliance with Insurance Law § 2610. At a January 28, 2010 deposition of Victor Politzi, the president of one of the Progressive defendants, he refused to answer questions concerning the investigation based on attorney-client privilege, and, on May 25, 2010, obtained a protective order from Justice Lefkowitz, sitting in the Compliance Part,[9] on that basis. On appeal, the Appellate Division, Second Department, reversed and remitted
“to Supreme Court, Westchester County, for an in camera inspection of answers, to be supplied by Politzi in writing, that are responsive to the disputed deposition questions posed by the plaintiffs counsel at Politzi’s deposition regarding the letter dated July 3, 2007, and for a new determination thereafter of the defendants’ motion for a protective order.”
By letter dated June 15, 2011, plaintiff requested that this court direct Mr. Politzi’s written responses for in camera review by June 30, 2011. By letter dated June 22, 2011, Progressive responded that it anticipated that written responses would be provided within 30 days of its letter. This court does not supervise discovery. Justice Lefkowitz issued the protective order, and the Appellate Division remitted the matter to her. Mr. Politzi’s responses shall be submitted to the Compliance Part in accordance with whatever schedule Justice Lefkowitz sets. Any and all applications for post-note of issue discovery will be made to the Compliance Part. As there is no longer a claim for steering in this case, such is without prejudice to the Trial Assignment Part scheduling this matter for trial pending the discovery on this tangential issue.

. Plaintiff is owned by Greg Coccaro, Sr. (51%), Frank Massella (24.5%) and Lazio Tudor (24.5%).

. Insurance Law § 2610 provides:
“(a) Whenever a motor vehicle collision or comprehensive loss shall have been suffered by an insured, no insurer providing collision or comprehensive coverage therefor shall require that repairs be made to such vehicle in a particular place or shop or by a particular concern.
“(b) In processing any such claim (other then a claim solely involving window glass), the insurer shall not, unless expressly requested by the insured, recommend or suggest repairs be made to such vehicle in a particular place or shop or by a particular concern.”

. To the extent that M.V.B. Collision, Inc. v Allstate Ins. Co. (728 F Supp 2d 205, 218 [2010]) held that the plaintiff therein was not a competitor of Allstate, this court disagrees. Having created and promoted the DEE] Progressive made itself, in a real sense, a competitor of plaintiff.

. Aside from the question of the continued efficacy of Sarmiento v World Yacht Inc. (10 NY3d 70, 81 [2008]) and H20 Swimwear v Lomas (164 AD2d 804, 806 [1990]) in light of City of New York v Smokes-Spirits.Com, Inc. (12 NY3d 616, 624 [2009]), both cases may be distinguished: the former as a private business dispute and the latter as a case in which neither a consumer nor a competitor was the plaintiff.

. The court notes that in opposition to Progressive’s motion, plaintiff submitted evidence of what it contends were deceptive acts perpetrated by two of Progressive’s DRP shops, aided and abetted by Progressive, such as charging the consumer-insureds for parts which were not installed or for new parts when used parts were used, harming the consumer-insureds. The court fails to see the relevance. The issue to be determined is whether and to what extent plaintiff lost customers due to misrepresentations made by Progressive to its insureds concerning plaintiff, not what misrepresentations it may or may not have made to its insureds concerning repairs that were performed at shops other than plaintiffs.

. Plaintiff also submitted evidence that Progressive interfered with prospective customer Rrustem Gecai in 2002. The complaint here was filed on February 16, 2007. All of the defendants have answered. None of the parties submitted the answer in violation of CPLR 3212 (b), and the court could have denied all the motions on that basis alone (Zellner v Tarnell, 54 AD3d 329 [2d Dept 2008]). As none of the parties has raised this procedural defect, rather than waste the court’s and the parties’ time, the court retrieved the answer from the Clerk’s Office and has reached the merits of the motions. The defendants plead the statute of limitations as an affirmative defense. As the statute of limitations for tortious interference is three years (Besicorp, Ltd. v Kahn, 290 AD2d 147, 150 [3d Dept 2002], lv denied 98 NY2d 601 [2002]), the alleged interference with respect to Rrustem Gecai is untimely and must be dismissed (Jim Mazz Auto, Inc. v Progressive Cas. Ins. Co., 2009 WL 891837, 2009 US Dist LEXIS 31945 [2009]).

. Jim Mazz Auto, Inc. also held that Progressive’s steering of its insureds in violation of Insurance Law § 2610 was wrongful conduct as criminal under Insurance Law § 109. This court disagrees. As plaintiff has no cause of action for steering, it cannot form the basis for a tortious interference claim whether criminal under the Insurance Law or not.

. While plaintiff submitted evidence that defendant Allison Chabon made misrepresentations about plaintiff to Thomas Leonard, as he continued to use plaintiffs shop, plaintiff was not injured by this alleged misrepresentation.

. Pursuant to the memorandum of Justice Scheinkman, Administrative Judge for the Ninth Judicial District, dated October 22, 2009, all discovery motions are heard in the Compliance Part.