[911 NE2d 834, 883 NYS2d 772]

CITY OF NEW YORK, Appellant, v SMOKES-SPIRITS.COM, INC., et al., Respondents, et al., Defendants. (And Other Actions.)

Argued May 5, 2009; decided June 9, 2009

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Elizabeth S. Natrella, Leonard Koerner* and *Eric Proshansky* of counsel), for appellant. I. The City of New York has standing under General Business Law § 349 to bring the instant claims. (*Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.,* 3 NY3d 200 [certified question answered], *sub nom. Empire Healthchoice, Inc. v Philip Morris USA, Inc.,* 393 F3d 312; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Karlin v IVF Am.,* 93 NY2d 282; *Matter of People v Applied Card Sys., Inc.,* 11 NY3d 105; *Gaidon v Guardian Life Ins. Co. of Am.,* 94 NY2d 330; *Teller v Bill Hayes, Ltd.,* 213 AD2d 141, 87 NY2d 937; *Blue Cross & Blue Shield of N.J, Inc. v Philip Morris, Inc.,* 178 F Supp 2d 198, 344 F3d 211; *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Maurizio v Goldsmith,* 230 F3d 518; *New York Univ. v*

*Continental Ins. Co.,* 87 NY2d 308.) II. Public Health Law § 1399-*ll* does not preempt common-law public nuisance claims. (*New York Trap Rock Corp. v Town of Clarkstown,* 299 NY 77; *N.A.A.C.P. v AcuSport, Inc.,* 271 F Supp 2d 435; *Copart Indus. v Consolidated Edison Co. of N.Y.,* 41 NY2d 564; *Lawton v Steele,* 119 NY 226, 152 US 133; *City of New York v Laing,* 236 AD2d 504; *Matter of Berncolors-Poughkeepsie, Inc. v City of Poughkeepsie,* 96 AD2d 595, 60 NY2d 701; *Hoover v Durkee,* 212 AD2d 839; *Briggs v City of N. Tonawanda,* 213 App Div 781; *Boomer v Atlantic Cement Co.,* 55 Misc 2d 1023, 30 AD2d 480, 26 NY2d 219; *State of New York v Fermenta ASC Corp.,* 238 AD2d 400, 90 NY2d 810.)

*Luebben Johnson & Barnhouse LLP* (*Randolph Barnhouse,* of the New Mexico bar, admitted pro hac vice, of counsel), and *Girvin & Ferlazzo, P.C.,* Albany (*Salvatore D. Ferlazzo* of counsel), for Hemi Group, LLC and another, respondent. I. The City of New York does not have standing to assert its claim under General Business Law § 349. (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20; *Morales v County of Nassau,* 94 NY2d 218; *People v Santi,* 3 NY3d 234; *Thoreson v Penthouse Intl.,* 80 NY2d 490, *Friedman v Connecticut Gen. Life Ins. Co.,* 9 NY3d 105; *Goshen v Mutual Life Ins. Co. of N.Y.,* 98 NY2d 314; *A. M. Knitwear Corp. v All Am. Export-Import Corp.,* 41 NY2d 14; *Butler v Beer Across Am.,* 83 F Supp 2d 1261; *Securitron Magnalock Corp. v Schnabolk,* 65 F3d 256; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.,* 3 NY3d 200.) II. The City of New York may not assert a common-law public nuisance claim that is predicated on Public Health Law § 1399-*ll*. (*Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801; *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.,* 3 NY3d 200.)

**OPINION OF THE COURT**

CIPARICK, J.

These consolidated actions arise out of plaintiff City of New York's claims that defendants' allegedly illegal marketing and shipment of cigarettes into this state have deprived it of tax revenues. To resolve plaintiff's state law claims, the United States Court of Appeals for the Second Circuit has certified two questions to us. First, "[d]oes the City have standing to assert its claims under General Business Law § 349?" (541 F3d 425, 457 [2008].) Second, "[m]ay the City assert a common law public nuisance claim that is predicated on N.Y. Public Health Law

§ 1399-*ll*?" (*Id*. at 458.) We answer both questions in the negative.

## I.

Collectively, New York State and City impose some of the highest cigarette excise taxes in the nation (*see* Tax Law §§ 471, 471-a; McKinney's Uncons Laws of NY § 9436 [1] [L 1952, ch 235, § 1 (1), as amended]; Administrative Code of City of NY § 11-1302 [a] [1]-[2]). At the time these actions were commenced, owing to the divergence in cigarette taxes throughout the nation, a carton of premium brand cigarettes purchased in Virginia or Kentucky cost approximately $30, while the same carton cost $70 in New York City.[1] This price differential is based almost entirely on the variance between cigarette excise taxes.

New York City's smokers cannot evade responsibility for city and state taxes simply by purchasing shipments of cigarettes from out-of-state sellers—like defendants—who operate in jurisdictions that impose minimal cigarette taxes. That is because, subject to exceptions not relevant here, the Tax Law and the Administrative Code of the City of New York require consumers to pay a tax on all cigarettes possessed for use in the city (*see* Tax Law § 471 [2]; § 471-a; Administrative Code of City of NY § 11-1302 [a] [3]). Thus, although out-of-state cigarette retailers are not required to collect state and city taxes at the time of sale, those taxes are still due and owing by a purchaser who possesses the cigarettes for use in New York.

Moreover, a federal law—the Jenkins Act—requires out-of-state cigarette sellers to file monthly reports with New York State's tobacco tax administrator (*see* 15 USC § 376 [a] [2]) and subjects violators to criminal penalties for failure to do so (*see* 15 USC § 377). Such reports—which must identify the name and address of persons to whom cigarette shipments were made along with the quantity and brand of cigarettes purchased—assist New York State taxing authorities in their efforts to collect cigarette use taxes (*see* 15 USC § 376 [a] [2]). The reports

---

1. At the inception of these lawsuits, New York City residents paid $3 in combined city and state excise taxes and another 33 cents in combined sales taxes for each pack of cigarettes purchased. While the City's excise tax remains $1.50, the Legislature recently amended Tax Law § 471 to increase the State's excise tax to $2.75, bringing the combined excise taxes payable in New York City up to $4.25 (*see* Tax Law § 471 [1]; Administrative Code of City of NY § 11-1302 [a] [3]).

also further the collection efforts of the City because, by agreement, the State's Department of Taxation and Finance is obligated to share such reports with the City's Department of Finance.

According to the City's complaints, defendants are out-of-state entities and persons engaged in the business of selling cigarettes over the Internet. They are located in states with negligible cigarette taxes and they have marketed and shipped cigarettes to New York City residents. As relevant here, certain defendants' Web sites have allegedly misrepresented that their Internet cigarette sales are "tax free," that their customers did not have to pay cigarette taxes, and/or that they are not required to file Jenkins Act reports. Due to these "materially deceptive and misleading" statements, the City alleges that some New York consumers were duped into purchasing cigarettes over the Internet in reliance on an entirely illusory tax savings. Consumers' apparent savings would disappear if the defendants filed Jenkins Act reports thereby allowing the City to locate cigarette purchasers and collect excise taxes owed for cigarette use. The City claims that defendants' deceptive statements, along with their failure to file Jenkins Act reports, have injured it in an undetermined amount of unpaid cigarette taxes. For this injury, the City seeks redress under General Business Law § 349 (h).

In two of its actions, the City also brought a common-law public nuisance claim. Its basis lies in the legislative findings that accompanied Public Health Law § 1399-*ll*, which stated, in part, that "[t]he legislature finds and declares that the shipment of cigarettes sold via the internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare" (*see* Legislative findings, L 2000, ch 262, § 1, reprinted in McKinney's Cons Laws of NY, Book 44, Public Health Law § 1399-*ll*, Historical and Statutory Notes, at 238). After outlining investigatory efforts that established that certain defendants had made shipments into its jurisdiction in violation of section 1399-*ll*, the City alleged that defendants' illicit shipments contributed to a public nuisance that "unreasonably and substantially interfer[ed] with rights common to the general public, with commerce and the quality of daily life and endanger[ed] the property, health and safety of large numbers of residents of New York City." Accordingly, plaintiff sought an injunction to prevent additional illegal shipments and reimbursement of its costs for abating the claimed public nuisance.

The federal district court dismissed the City's General Business Law § 349 and public nuisance claims (2006 WL 647716, 2006 US Dist LEXIS 10295 [SD NY 2006]). On appeal, the circuit court recognized that while standing under General Business Law § 349 (h) had been extended to consumers and competitors, the statute had not yet been interpreted to grant a right of action to parties not suing in either of those capacities. The court also questioned the propriety of the City bringing a public nuisance claim predicated upon Public Health Law § 1399-*ll*. Accordingly, the court certified two legal questions to us. We now answer both in the negative.[2]

## II.

General Business Law § 349 (a) declares unlawful "[d]eceptive acts or practices in the conduct of any business." As amended in 1980, the statute provides a private right of action to "any person who has been injured by reason of" such illegal conduct (*see* General Business Law § 349 [h]). The purpose of this amendment was to expand enforcement authority beyond the Attorney General and thereby ensure more optimal protection of the public (*see Karlin v IVF Am.*, 93 NY2d 282, 291 [1999], citing Mem of Assemblyman Strelzin in Support of L 1980, ch 346, 1980 NY Legis Ann, at 146; Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 566 [1988 ed], quoting Governor's Approval Mem, 1980 McKinney's Session Laws of NY, at 1867 ["(T)he purpose of the private right( ) of action was to permit private enforcement against injuries resulting from consumer fraud" (internal quotation marks omitted)]).

To successfully assert a section 349 (h) claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice (*see Stutman v Chemical Bank*, 95 NY2d 24, 29 [2000]). Here, the City insists that it is part of the broad class of

---

**2.** On May 4, 2009, the United States Supreme Court granted two defendants' petition for a writ of certiorari, which sought review of the Second Circuit's ruling regarding claims brought by the City under the federal Racketeer Influenced and Corrupt Organizations Act (*see Hemi Group, LLC v City of New York*, — US —, 129 S Ct 2159 [2009]). As the resolution of those federal claims does not affect our consideration of the City's relevant pendent state claims—which invoked the federal district court's diversity jurisdiction (*see* 28 USC § 1332)—we proceed to answer the questions certified to us by the Second Circuit.

"person[s]" granted standing to pursue a section 349 claim (see General Construction Law § 37; Joseph Thomas Moldovan, Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook L Rev 509, 526-527 [1982]). In a proper case, the City may be able to avail itself of a remedy pursuant to subdivision (h). But it has failed to establish standing here because its claimed injury, in the form of lost tax revenue, is entirely derivative of injuries that it alleges were suffered by misled consumers who purchased defendants' cigarettes over the Internet.

In *Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc.* (3 NY3d 200 [2004]), we held that "derivative actions are barred" under section 349 (h) (*id.* at 207). "An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party" (*id.*). Thus, we concluded that the plaintiff insurance plan could not recover medical payments made on behalf of subscribers who suffered from smoking-related illnesses even though the defendants' misrepresentations as to the negative health effects of smoking allegedly caused those injuries. Although the plan had incurred costs due to the alleged deception, its injury was still "indirect"—and thus not compensable under section 349 (h)—"because the losses it experienced arose wholly as a result of smoking related illnesses suffered by [its] subscribers" (*id.*). In rendering this decision, we noted the lack of any clear indication from the Legislature that derivative injuries were actionable under section 349 (h) (*see id.* at 206-207), our concern with expanding section 349 to permit " 'a tidal wave of litigation against businesses that was not intended by the Legislature' " (*see id.* at 207, quoting *Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 26 [1995]), and that our holding was "in accord with several other courts that recognize a remoteness bar to recovery under their state consumer protection statutes" (*see id.* at 208 n 3 [citing cases]).

The City's claimed injury here is just as indirect as the insurer's was in *Blue Cross*. Quite simply, had the allegedly deceived consumers not been improperly induced to purchase defendants' cigarettes then the City would have no claim to lost tax revenue (*see Blue Cross*, 3 NY3d at 207 ["Although (the insurer) actually paid the costs incurred by its subscribers, its claims are nonetheless indirect because the losses it experienced arose wholly as a result of smoking related illnesses suffered by those subscribers"]; *see also Laborers Local 17 Health & Benefit*

*Fund v Philip Morris, Inc.*, 191 F3d 229, 239 [2d Cir 1999] ["Being purely contingent on harm to third parties, these injuries are indirect"]). Although in some sense the City's injuries are "caused" by defendants' alleged conduct, this Court has required more than an allegation of "but for" cause to state a claim for relief under section 349 (h) (*see Blue Cross*, 3 NY3d at 208; *Stutman*, 95 NY2d at 30 ["(P)laintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required . . . This allegation satisfies the causation requirement"]; *see also Ganim v Smith & Wesson Corp.*, 258 Conn 313, 373, 780 A2d 98, 134 [2001] [" 'but for' cause" allegation insufficient under state unfair trade practices act]).

We reject the City's assertion that it may state a cognizable section 349 (h) claim "simply" by alleging "consumer injury or harm to the public interest." If a plaintiff could avoid the derivative injury bar by merely alleging that its suit would somehow benefit the public, then the very "tidal wave of litigation" that we have guarded against since *Oswego* would loom ominously on the horizon (*see* 85 NY2d at 26; *Blue Cross*, 3 NY3d at 207). Certainly, "as a threshold matter, plaintiffs claiming the benefit of section 349 . . . must charge conduct of the defendant that is consumer-oriented" (*see Oswego*, 85 NY2d at 25). But such plaintiffs must also plead that they have suffered actual injury caused by a materially misleading or deceptive act or practice (*see id.* at 26; *accord Blue Cross*, 3 NY3d at 205-206; *see also Stutman*, 95 NY2d at 29 ["The plaintiff . . . must show that the defendant's 'material deceptive act' caused the injury"]). Since *Blue Cross*, it has been clear that allegations of indirect or derivative injuries will not suffice (*see* 3 NY3d at 207).

Nothing in *Securitron Magnalock Corp. v Schnabolk* (65 F3d 256 [2d Cir 1995]) purports to confer standing upon derivatively injured parties such as the City. There, the Second Circuit characterized the "gravamen" of a section 349 claim as "consumer injury or harm to the public interest" (*id.* at 264, quoting *Azby Brokerage, Inc. v Allstate Ins. Co.*, 681 F Supp 1084, 1089 n 6 [SD NY 1988]). We, too, have emphasized that section 349 is "directed at wrongs against the consuming public" and that plaintiffs must demonstrate that the complained-of acts or practices "have a broader impact on consumers at large" (*see Oswego*, 85 NY2d at 24, 25; *see also Gaidon v Guardian Life Ins. Co. of Am.*, 94 NY2d 330, 344 [1999]).

But those statements relate to just one element of a section 349 claim—consumer-oriented conduct (*see Gaidon*, 94 NY2d at

344). The *Securitron* court did not discuss the remaining two elements—materially misleading or deceptive act or practice and actual injury—presumably because the defendants there argued that " 'there is absolutely *nothing* in this record showing that this private commercial dispute between the plaintiff and the defendant was aimed at the public' " (*see* 65 F3d at 264). This argument derives from the rule, recognized in *Oswego*, that certain disputes, such as "[p]rivate contract disputes, unique to the parties . . . would not fall within the ambit of [section 349]" (*see Oswego*, 85 NY2d at 25, citing *Genesco Entertainment, a Div. of Lymutt Indus., Inc. v Koch*, 593 F Supp 743, 752 [SD NY 1984]). Thus, in concluding that defendants' purely-private-dispute argument was meritless in the case before it, the *Securitron* court did not expand the class of section 349 (h) plaintiffs to those persons who, like the City, can link a derivative injury to some public harm.[3]

Accordingly, we hold that plaintiff lacks standing to bring its section 349 (h) claim for lost cigarette tax revenue.

### III.

█ Turning to the public nuisance claim, the City admits that the conduct it complains of—the "mailing of cigarettes"—"is not illegal or even traditionally deemed offensive." But it says that the legislative findings accompanying Public Health Law § 1399-*ll* changed that and that those findings permit it to bring an action to abate this "newly characterized" public nuisance since nothing in section 1399-*ll* or its legislative history purports to preempt such a claim. We agree that the Legislature had in mind a concern for the public

---

**3.** We have cited *Securitron* for the proposition that the class of persons accorded standing under 349 (h) is not necessarily limited to "consumers" (*see Blue Cross*, 3 NY3d at 207). The present case offers no occasion for us to opine upon the classes of potential plaintiffs who may or may not have standing to sue under section 349 (h). We note, however—as we have in the past—that there is some legislative history supporting the position that business competitors have standing under the statute (*see Blue Cross*, 3 NY3d at 207, citing May 21, 1980 Mem of Atty Gen, Bill Jacket, L 1980, ch 346; Special Comm on Consumer Affairs of Assn of Bar of City of NY, *"Private Right of Action" Proposals*, Bill Jacket, L 1980, ch 346 ["permitting suits by either consumers or competitors . . . would help to police the marketplace against misrepresentations which constitute deception against the consumer and unfair competition with firms not engaging in such practices"]; *see also* Givens, Practice Commentaries, McKinney's Cons Laws of NY, Book 19, General Business Law § 349, at 565 [1988 ed] ["In addition to consumers, . . . competitors . . . are given the right to sue by (General Business Law) §§ 349 (h) and 350-d as an additional enforcement measure"]).

health—specifically, the detrimental effects of smoking on minors—when it passed section 1399-*ll*. We do not view this case, however, as one involving preemption. Instead, the question here is one of pure statutory interpretation. Based on its text and legislative history, we conclude that the Legislature did not contemplate that section 1399-*ll* would be used as the predicate for public nuisance actions in cases—like the present—that primarily involve alleged tax evasion.[4]

Public Health Law § 1399-*ll* is found under article 13-F of the Public Health Law, which is entitled "Regulation of Tobacco Products and Herbal Cigarettes; Distribution to Minors." By its provisions, it is "unlawful for any person engaged in the business of selling cigarettes to ship or cause to be shipped any cigarettes to any person in this state" who is not a person licensed as a cigarette tax agent, wholesale dealer, or a registered retail dealer; an export warehouse proprietor or an operator of a customs bonded warehouse; or a person who is a government agent or employee, acting in an official capacity (*see* Public Health Law § 1399-*ll* [1]). Likewise, "common or contract carrier[s]" are forbidden from knowingly transporting cigarettes to any person not within the class of exempted persons (*see* § 1399-*ll* [2]). The same prohibition applies to "any other person," except that such individuals are permitted to transport "not more than eight hundred cigarettes at any one time to any person in this state" (*see id.*). The statute provides that authorized shipments sent by cigarette sellers must be "plainly and visibly marked with the word 'cigarettes'," unless shipped "in the cigarette manufacturer's original container or wrapping" (*see* § 1399-*ll* [3]).

Unauthorized shipments are subject to seizure and forfeiture (*see* Public Health Law § 1399-*ll* [4]) and expose the violator to criminal and civil penalties. Thus, a shipment in violation of

---

4. The City's public nuisance claims were brought against certain defendants who have elected not to appear before us for oral argument or to submit a brief for our review. We do not consider these claims moot since we have no indication that they are not presently the subject of a live controversy (*see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812 [2003] ["Where, as here, a judicial determination carries immediate, practical consequences for the parties, the controversy is not moot"]). Similarly, because our decision will have an effect on the City's public nuisance claims, the second certified question is not academic (*compare Blue Cross*, 3 NY3d at 209). Moreover, while it is unfortunate that the relevant defendants did not appear, in this case their arguments can be sufficiently assessed based on the briefs filed in the Second Circuit, which are part of the record before us (*see* 541 F3d 425, 458 [2d Cir 2008]; 22 NYCRR 500.27 [c]).

subdivision (1) or (2) constitutes a class A misdemeanor, which is increased to a class E felony upon a "second or subsequent violation" (*see* § 1399-*ll* [5]). In addition, section 1399-*ll* (5) authorizes the imposition of up to a $5,000 civil fine for each violation of subdivision (1) or (2) and a similar fine for violation of subdivision (3), when committed by a cigarette seller (*see id.*).

A concern with public health as well as the public fisc is evident in section 1399-*ll*'s legislative findings. These state that

> "[t]he legislature finds and declares that the shipment of cigarettes sold via the internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare, to the funding of health care pursuant to the health care reform act of 2000, and to the economy of the state. The legislature also finds that when cigarettes are shipped directly to a consumer, adequate proof that the purchaser is of legal age cannot be obtained by the vendor, which enables minors to avoid the provisions of article 13-F of the public health law. It is also the legislature's finding that by preventing shipment of cigarettes directly to consumers, the State will be better able to measure and monitor cigarette consumption and to better determine the public health and fiscal consequences of smoking. The legislature further finds that existing penalties for cigarette bootlegging are inadequate. Therefore, the bill enhances existing penalties for possession of unstamped or unlawfully stamped cigarettes" (*see* Legislative findings, L 2000, ch 262, § 1, reprinted in McKinney's Cons Laws of NY, Book 44, Public Health Law § 1399-*ll*, Historical and Statutory Notes, at 238).

It is well settled that a governmental entity, such as the City, may bring an action to abate a public nuisance or the

> "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons" (*see Copart Indus. v Consolidated Edison Co. of N.Y.*, 41 NY2d 564, 568 [1977] [citations omitted]; *New York Trap Rock Corp. v Town of*

*Clarkstown,* 299 NY 77, 83 [1949] [*Trap Rock I*]
["(A) municipal corporation . . . has the capacity
and is a proper party to bring an action to restrain
a public nuisance which allegedly has injured the
health of its citizens"]).

Equally clear is the Legislature's authority to enact laws deeming certain activities public nuisances (*see Trap Rock I*, 299 NY at 84-85; *People v New York Trap Rock Corp.*, 57 NY2d 371, 377 [1982]; *see also Lawton v Steele*, 152 US 133, 140 [1894]; Restatement [Second] of Torts § 821B, Comment *c* ["(A)ll of the states have numerous special statutes declaring certain conduct or conditions to be public nuisances"]).

But we think that the task of discerning whether a set of legislative findings purports to recognize a particular type of conduct as a public nuisance is one of statutory construction, requiring us to "look beyond the language of the statute . . . to search for and effectuate the Legislature's purpose" (*cf. Fumarelli v Marsam Dev.*, 92 NY2d 298, 303 [1998]; *Uhr v East Greenbush Cent. School Dist.*, 94 NY2d 32, 38 [1999] ["A statutory command . . . does not necessarily carry with it a right of private enforcement by means of tort litigation"]). In this regard, the maxim that an "affirmative statute," such as section 1399-*ll*, should not be read to cancel the City's common-law right to abate public nuisances (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 34, Comment, at 76-77) is unhelpful since the City essentially concedes that the right to abate the nuisance caused by the shipment of cigarettes did not exist prior to the enactment of section 1399-*ll*. In any event, we need not resort to canons of construction "because the legislative intent is otherwise more readily and reliably manifest" (*see Fumarelli*, 92 NY2d at 307).

Properly framed, we believe that the second certified question requires an inquiry similar to that undertaken in cases concerning implied private rights of action (*see Sheehy v Big Flats Community Day*, 73 NY2d 629, 633 [1989]; *Uhr*, 94 NY2d at 38; *Hammer v American Kennel Club*, 1 NY3d 294, 299 [2003]; *McLean v City of New York*, 12 NY3d 194, 200 [2009]). In such cases we consider " '(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme" (*see Hammer*, 1 NY3d at 299, quoting *Carrier v Salvation Army*, 88 NY2d 298, 302 [1996]).

With respect to the public health, the Legislature's passage of section 1399-*ll* was predominantly intended to "prevent young people in New York from becoming addicted to cigarettes" (*see* Senate Introducer Mem in Support, Bill Jacket, L 2000, ch 262, at 6 [2000 McKinney's Session Laws of NY, at 1707]; *see also id.* at 3 [2000 Session Laws at 1704] ["These amendments will prevent underage youths from obtaining cigarettes, and in effect, require that all purchases be made face-to-face in retail stores where proof of age can be ascertained"]; Mem of State of NY Dept of Public Health, Bill Jacket, L 2000, ch 262, at 17; *Sting's smoking gun*, New York Daily News, July 14, 2000, Bill Jacket, L 2000, ch 262, at 51 [describing Department of Consumer Affairs investigation in which "a 7-year-old boy bought cigarettes over the Internet three times"]). Although our State has stringent proof-of-age requirements intended to prevent persons under the age of 18 from purchasing cigarettes (*see* Public Health Law § 1399-cc), by 2000, it had become apparent that certain minors were circumventing those measures by making purchases from mail order or Internet cigarette retailers (*see* Senate Introducer Mem in Support, Bill Jacket at 6 [2000 Session Laws at 1707]). As explained in section 1399-*ll*'s Bill Jacket:

> "[P]ersons under 18 often receive cigarettes by mail-order or Internet purchases from out-of-state vendors or unlicensed in-state vendors.
>
> "Recognizing this problem and the proliferation of Internet sales, this bill would make it unlawful for persons who sell cigarettes to ship or cause cigarettes to be shipped to any person in the State [who does not fall within the three exceptions codified in section 1399-*ll* (1)]. Further, the bill would make it unlawful for a common or contract carrier to knowingly transport cigarettes to . . . a person in this State reasonably believed by such carrier to be a person other than a person authorized to receive cigarettes. With few exceptions, cigarette consumers will thus have to purchase their cigarettes at a registered retail dealer's place of business. As a result, *these amendments would ensure that the Public Health Law's proof of age requirements would not be evaded by underage purchasers.* Further, the State's Cigarette Marketing Standards Act (CMSA) in Article 20-A of the Tax Law, which provides

minimum prices for sales of cigarettes in the State in conjunction with the State's tax on cigarettes, would not be avoided, *thereby further discouraging smoking among persons under 18"* (*id.* [emphasis added]).

Even assuming that the City may be included within the class of persons whom the Legislature had in mind when enacting section 1399-*ll* and that a public nuisance action may in some cases further the legislative purpose, permitting the present public nuisance actions to proceed would not be consistent with the legislative scheme. To be sure, the penalties authorized by section 1399-*ll* take aim at tax evasion, albeit primarily to deter underage smoking (*see* Senate Introducer Mem in Support, Bill Jacket at 6 [2000 Session Laws at 1707]). But enforcement of those penalties has been entrusted to local district attorneys and the Commissioner of Health (*see* § 1399-*ll* [5]). When it enacted the criminal and civil penalties contained in section 1399-*ll* (5), the Legislature also codified a series of amendments intended to "strenghten[ ] existing civil and criminal penalties" that already punished cigarette tax evasion, or "bootlegging" (*see* Senate Introducer Mem in Support, Bill Jacket at 6-7 [2000 Session Laws at 1707]; *see also* Budget Report on Bills, Bill Jacket, L 2000, ch 262, at 13-14 [listing amendments to previously enacted laws]). Thus, the City's alleged injury—lost tax revenue—is a harm that is subject to thorough regulation, both by section 1399-*ll* as well as other laws not implicated here.

When considering similarly comprehensive enforcement schemes, we have declined to imply a private right of action (*see Hammer*, 1 NY3d at 300; *McLean*, 12 NY3d at 200-201; *Uhr*, 94 NY2d at 40). The presence of such a scheme here, when coupled with the Legislature's clear expressions that the public health thrust of section 1399-*ll* was related to the prevention of underage smoking, persuades us that the Legislature did not intend its findings to authorize a public nuisance claim based primarily upon alleged tax evasion (*cf. Fumarelli*, 92 NY2d at 307 ["The history, timing, wording, and breadth of the statutory enactment all indicate that the Legislature did not intend an overlapping dual track that would engender confusion, indefiniteness, and lawsuits"]).[5]

---

**5.** We acknowledge that a different result might be reached if the City's complaint alleged that defendants had made unauthorized shipments to minors (*cf. City of New York v Milhelm Attea & Bros., Inc.*, 550 F Supp 2d 332,

Accordingly, the certified questions should be answered in the negative.

Chief Judge LIPPMAN and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Following certification of questions by the United States Court of Appeals for the Second Circuit and acceptance of the questions by this Court pursuant to section 500.27 of the Rules of Practice of the New York State Court of Appeals (22 NYCRR 500.27), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified questions answered in the negative.

---

349 [ED NY 2008] [finding public nuisance claim viable in action against cigarette wholesalers where City alleged "that sellers of unstamped cigarettes are 'major suppliers' to underage smokers, and these sellers fail to comply with N.Y. Public Health Law § 1399-cc (3), which requires proof of age"]). But no such allegations appear in the complaints here.