OPINION OF THE COURT
Miller, J.
This case presents us with the question of whether a business entity has stated a valid cause of action for violation of General Business Law § 349 (h) where it alleges that another business entity deceived and misled prospective customers, causing it to sustain direct economic loss in the form of more than $5 million in lost business sales. We conclude that it does.
I. Factual And Procedural Background
The defendants Progressive Insurance Group Company, Progressive Northeast Insurance Company, Progressive Casualty Insurance Company, Progressive Direct Insurance Company, and Progressive Specialty Insurance Company (hereinafter collectively the Progressive defendants) are involved in underwriting automobile insurance policies in the State of New York. In approximately 2000, the Progressive defendants initiated, internally promoted, and advertised a direct repair program (hereinafter the DRP) by which they contracted with numerous vehicle repair shops regarding rates and terms of repairs for *9 claimants. The plaintiffs, North State Autobahn, Inc. and North State Autobahn, Inc., doing business as North State Custom, operated a vehicle repair shop that was not a member of the DRE
In 2007, the plaintiffs commenced this action against the Progressive defendants and a number of Progressive employees, including the defendant Nicholas Stanton. The first cause of action asserted in the complaint alleged that the Progressive defendants had violated General Business Law § 349. Specifically, the complaint alleged that the Progressive defendants engaged in practices which deceived claimants who sought to have their vehicles repaired at the plaintiffs’ and other repair shops that did not participate in the DRP by making misrepresentations as to their workmanship, price, timeliness of service, and character. The plaintiffs also alleged that the Progressive defendants issued damage repair appraisals well below fair-market value at about one half the estimate of the plaintiffs’ estimate, and that the Progressive defendants represented to claimants that the plaintiffs would make only partial payments for repairs which would necessarily require claimants who had their vehicles repaired by the plaintiffs or other independent shops to incur out-of-pocket expenses.
The plaintiffs further alleged that the Progressive defendants engaged in such deceptive practices in order to mislead customers of the plaintiffs and other independent shops to believe that they must have their vehicles repaired at repair shops that were members of the DRE The Progressive defendants allegedly failed to inform these claimants that the repair shops that participated in the DRP used inferior aftermarket parts, or were not registered or qualified to work on specific vehicle models. As a result of the Progressive defendants’ actions, the plaintiffs alleged that they sustained direct economic loss in the form of more than $5 million in lost business sales, and that the public at large sustained other damages.
The fifth and sixth causes of action in the complaint were asserted against both the Progressive defendants and Stanton. The fifth cause of action alleged tortious interference with prospective business advantage. The sixth cause of action alleged injurious falsehood. With respect to the cause of action alleging injurious falsehood, the plaintiffs alleged, inter alia, that the Progressive defendants made numerous derogatory statements about the plaintiffs to their insureds.
The Progressive defendants moved for summary judgment dismissing the complaint insofar as asserted against them, and *10 Stanton separately moved for summary judgment dismissing the complaint insofar as asserted against him. The Supreme Court, inter alia, denied that branch of the Progressive defendants’ motion which was for summary judgment dismissing the cause of action alleging violation of General Business Law § 349 (32 Misc 3d 798 [2011]). The court also denied that branch of Stanton’s motion which was for summary judgment dismissing the cause of action alleging tortious interference with prospective business advantage insofar as asserted against him.
With respect to that branch of the Progressive defendants’ motion which was for summary judgment dismissing the cause of action alleging injurious falsehood, the Supreme Court classified the allegedly derogatory statements into three general categories: (1) statements indicating that the plaintiffs were a difficult shop and were difficult to deal with; (2) statements indicating that the plaintiffs overcharged their customers and did not do good work; and (3) statements to the effect that the plaintiffs were a “bunch of crooks.” The court concluded that the statements identified under “category 1” were statements of opinion which were not actionable. However, the court concluded that the plaintiffs had submitted sufficient evidence to raise a triable issue of fact with respect to so much of the cause of action alleging injurious falsehood as was based on the statements identified as “category 2” and “category 3.” Accordingly, the court denied that branch of the Progressive defendants’ motion which was for summary judgment dismissing so much of the cause of action alleging injurious falsehood as was based on allegations other than “category 1” insofar as asserted against them. The court granted that branch of Stanton’s motion which was to dismiss that cause of action insofar as asserted against him. The Progressive defendants and Stanton jointly appeal from stated portions of the order.
As an initial matter, the Progressive defendants are not aggrieved by so much of the order appealed from as denied that branch of Stanton’s motion which was for summary judgment dismissing the cause of action alleging tortious interference with prospective business advantage insofar as asserted against him (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144 [2010]). Accordingly, the appeal by the Progressive defendants from that portion of the order must be dismissed.
Similarly, Stanton is not aggrieved by so much of the order as denied those branches of the Progressive defendants’ motion which were for summary judgment dismissing the cause of ac *11 tion alleging violation of General Business Law § 349 and so much of the cause of action alleging injurious falsehood as was based on allegations other than “category 1” insofar as asserted against them (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144 [2010]). Accordingly, the appeal by Stanton from those portions of the order must be dismissed as well.
Turning to the merits, we conclude that the Supreme Court properly denied those branches of the Progressive defendants’ motion which were for summary judgment dismissing the causes of action alleging violation of General Business Law § 349 and so much of the cause of action alleging injurious falsehood as was based on allegations other than “category 1” insofar as asserted against them. However, we conclude that the court should have granted that branch of Stanton’s motion which was for summary judgment dismissing the cause of action alleging tortious interference with prospective business advantage insofar as asserted against him. Accordingly, we modify.
II. General Business Law § 349
General Business Law § 349 declares unlawful all “ [deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state” (General Business Law § 349 [a]). “Section 349 governs consumer-oriented conduct and, on its face, applies to virtually all economic activity” (Small v Lorillard Tobacco Co., 94 NY2d 43, 55 [1999]; see Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 324 [2002]; Karlin v IVF Am., 93 NY2d 282, 290-291 [1999]).
To successfully assert a claim under General Business Law § 349 (h), “a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice” (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d 616, 621 [2009]; see Koch v Acker, Merrall & Condit Co., 18 NY3d 940, 941 [2012]; Stutman v Chemical Bank, 95 NY2d 24, 29 [2000]). In this case, the Progressive defendants contend that the conduct at issue was not consumer-oriented and that the plaintiffs failed to adequately allege that they suffered an injury as a result of the Progressive defendants’ allegedly deceptive conduct.
A. Consumer-Oriented Conduct
“[P]arties claiming the benefit of [General Business Law § 349 (h)] must, at the threshold, charge conduct that is *12 consumer oriented” (New York Univ. v Continental Ins. Co., 87 NY2d 308, 320 [1995]; see Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d 330, 334 [1999]; Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20, 25 [1995]; see also Genesco Entertainment, a Div. of Lymutt Indus., Inc. v Koch, 593 F Supp 743, 752 [SD NY 1984]). “Private contract disputes, unique to the parties . . . [do] not fall within the ambit of the statute” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25; see New York Univ. v Continental Ins. Co., 87 NY2d at 320). The “ ‘single shot transaction’ ” (Genesco Entertainment, a Div. of Lymutt Indus., Inc. v Koch, 593 F Supp at 752), which is “tailored to meet the purchaser’s wishes and requirements” (New York Univ. v Continental Ins. Co., 87 NY2d at 321), does not, without more, constitute consumer-oriented conduct for the purposes of this statute (see Biancone v Bossi, 24 AD3d 582, 583 [2005]; Lynch v McQueen, 309 AD2d 790, 792 [2003]; Teller v Bill Hayes, Ltd., 213 AD2d 141, 145 [1995]; United Knitwear Co. v North Sea Ins. Co., 203 AD2d 358, 359 [1994]).
On the other hand, conduct has been held to be sufficiently consumer-oriented to satisfy the statute where it involved “an extensive marketing scheme” (Gaidon v Guardian Life Ins. Co. of Am., 94 NY2d at 344), where it involved the “multi-media dissemination of information to the public” (Karlin v IVF Am., 93 NY2d at 293), and where it constituted a standard or routine practice that was “consumer-oriented in the sense that [it] potentially affect[ed] similarly situated consumers” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 27; see Wilner v Allstate Ins. Co., 71 AD3d 155, 164 [2010]; Elacqua v Physicians’ Reciprocal Insurers, 52 AD3d 886, 888 [2008]). Simply put, “[the] defendant’s acts or practices must have a broad impact on consumers at large” (New York Univ. v Continental Ins. Co., 87 NY2d at 320; see Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25; Canario v Gunn, 300 AD2d 332, 333 [2002]; see also Genesco Entertainment, a Div. of Lymutt Indus., Inc. v Koch, 593 F Supp at 752).
Here, the Progressive defendants argue that they are entitled to summary judgment on the ground that the complaint fails to state a cause of action for violation of General Business Law § 349 (see Biancone v Bossi, 24 AD3d at 583). Specifically, they contend that the plaintiffs failed to base their cause of action on conduct that affects consumers in general.
*13 Contrary to the Progressive defendants’ contention, the complaint is not based upon a private contract dispute or a single shot transaction between them and plaintiffs (cf. New York Univ. v Continental Ins. Co., 87 NY2d at 320; Biancone v Bossi, 24 AD3d at 583; Lynch v McQueen, 309 AD2d at 792; Korn v First UNUM Life Ins. Co., 277 AD2d 355, 356 [2000]). Rather, the complaint alleges that the Progressive defendants engaged in deceptive conduct which misled customers of the plaintiffs and other independent shops into believing that they must have their vehicles repaired at repair shops that were members of the DRP The complaint further alleges that this conduct was part of an institutionalized program and that it constituted a standard practice that was routinely applied to all claimants who sought to have their vehicles repaired by the plaintiffs or by any other independent repair shop. Accordingly, the complaint adequately alleges conduct that is consumer-oriented inasmuch as it alleges conduct that has a "broad[ ] impact on consumers at large” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25; see Wilner v Allstate Ins. Co., 71 AD3d at 164; Elacqua v Physicians’ Reciprocal Insurers, 52 AD3d at 888).
The Progressive defendants further contend that in order to show that the alleged conduct has a broad impact on consumers, the plaintiffs must identify individual consumers who were specifically harmed when they were misled into having repairs done at the DRP shops. The Supreme Court rejected this contention, and so do we.
On its face, General Business Law § 349 (a) declares deceptive conduct unlawful without reference to whether it has actually caused specific pecuniary harm to consumers in general. The statute declares unlawful “[deceptive acts or practices in the conduct of any business” (General Business Law § 349 [a]). The requirement that the consumer-oriented conduct be materially misleading limits the availability of section 349 (a) to cases where the deception pertains to an issue that may bear on a consumer’s decision to participate in a particular transaction. As such, the statute is limited in its application to those acts or practices which undermine a consumer’s ability to evaluate his or her market options and to make a free and intelligent choice. In this sense, the deception itself is the harm that the statute seeks to remedy: “Consumers have the right to an honest market place” (Mem of Governor Rockefeller, 1970 NY Legis Ann at 472; see Richard A. Givens, Practice Commentaries, McKinney’s *14 Cons Laws of NY, Book 19, General Business Law § 349 at 569 [1988 ed] [“The Legislature determined . . . that consumer deceptions of this sort inherently hurt the public—including both consumers themselves and legitimate business”]).
To require a showing of specific quantifiable harm to the public at large goes beyond the Court of Appeals’ statement that a plaintiff need only show an “impact” on consumers (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25). Such a requirement would be inconsistent with past cases which hold that the threshold requirement of consumer-oriented conduct may be satisfied where the allegedly deceptive acts are standardized such that “they potentially affect similarly situated consumers” (id. at 21 [emphasis added]; see Wilner v Allstate Ins. Co., 71 AD3d at 164; Elacqua v Physicians’ Reciprocal Insurers, 52 AD3d at 888; cf. Restatement [Third] of Unfair Competition § 2).
Furthermore, a requirement that a plaintiff must show specific quantifiable harm to the public at large would be inconsistent with the principle that “conduct need not be repetitive or recurring” in order to come within the purview of the statute (New York Univ. v Continental Ins. Co., 87 NY2d at 320; see Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25). Indeed, “the legislative history makes plain that this law was intended to ‘afford a practical means of halting consumer frauds at their incipiency without the necessity to wait for the development of persistent frauds’ ” (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d at 25, quoting Mem of Governor Rockefeller, 1970 NY Legis Ann at 472-473; see Mem of Dept of Law to Governor, Bill Jacket, L 1970, ch 43 at 5). Indeed, the availability of injunctive relief permits the Attorney General to bring an action upon his or her belief that “any person, firm, corporation or association ... is about to engage in any of the acts or practices stated to be unlawful” (General Business Law § 349 [b]; cf. Richard A. Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349 at 565 [1988 ed] [“There is no requirement that the plaintiff show specific dollar injury, or to obtain injunctive relief that there even be pecuniary injury at all”]).
In light of the plain language of General Business Law § 349 (a), we conclude that the plaintiffs were not required to identify specific consumers who suffered pecuniary harm as a result of the allegedly deceptive conduct in order to show that the alleged *15 conduct has a broad impact on consumers. Accordingly, we conclude that the Progressive defendants failed to establish, prima facie, their entitlement to judgment as a matter of law on the ground that the plaintiffs failed to adequately allege consumer-oriented conduct.
B. Direct Injury
As indicated, the Progressive defendants also contend that the plaintiffs failed to adequately allege that they suffered injury as a result of the allegedly deceptive acts or practice. The Progressive defendants argue that the plaintiffs did not adequately allege that they suffered a direct injury, and that they therefore do not have standing under General Business Law § 349 (h).
When General Business Law § 349 was enacted in 1970, only the Attorney General was empowered to enforce it (see General Business Law § 349 [b], as added by L 1970, ch 43, § 2). “It soon became clear, however, that the 'broad scope of section 349, combined with the limited resources of the Attorney General, [made] it virtually impossible for the Attorney General to provide more than minimal enforcement’ ” (Karlin v IVF Am., 93 NY2d at 291, quoting Mem of Assemblyman Strelzin in Support of L 1980, ch 346, 1980 NY Legis Ann at 146).
In 1980 the statute was amended to provide a private right of action: “any person who has been injured by reason of any violation of this section may bring an action in his [or her] own name” (General Business Law § 349 [h], as added by L 1980, ch 346, § 1). “Among the remedies available to private plaintiffs are compensatory damages, limited punitive damages and attorneys’ fees” (Karlin v IVF Am., 93 NY2d at 291; see General Business Law § 349 [h]). The statute also makes injunctive relief available to private plaintiffs (see General Business Law § 349 [h]).
The Court of Appeals has recognized that “section 349 is a broad, remedial statute and that the provision creating a private right of action employs expansive language” (Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d 200, 207 [2004]). The Court has never explicitly held that section 349 (h) only confers standing on individual members of the consuming public. To the contrary, the Court has indicated that “limit[ing] the scope of section 349 to only consumers” would be “in contravention of the statute’s plain language permitting recovery by any person injured ‘by reason of’ any violation” (Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 207).
*16 Accordingly, when analyzing the issue of whether a plaintiff has standing to commence a private action pursuant to section 349 (h), the Court of Appeals has confined its analysis to determining the nature of the alleged injury and whether it is sufficiently connected to the asserted unlawful conduct (see City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 622-624; Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 206-208). In this regard, the Court has stated that plaintiffs “must. . . plead that they have suffered actual injury caused by a materially misleading or deceptive act or practice” (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 623).
Recognizing that the 1980 amendments only permit recovery by one injured “by reason of” a deceptive business practice (General Business Law § 349 [h]), the Court has refused to “presume an intent to include recovery for derivative injuries within the scope of the statute in the absence of a clear indication of such intent from the Legislature” (Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 207). The Court has made it clear that “allegations of indirect or derivative injuries will not suffice” (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 623).
In Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc. (3 NY3d at 203), the plaintiff was one of several health care plans that commenced an action against tobacco companies alleging that they engaged in deceptive practices which misled the public regarding the harmful effects of smoking. The plaintiff sought to recover from the tobacco companies the costs of services that it had provided to plan subscribers as a result of those subscribers being harmed by the effects of smoking (id.). The Court concluded that the plaintiff health plan had “no standing to bring [the] action under General Business Law § 349 because its claims [were] too remote” (id. at 208).
Four years later, in City of New York v Smokes-Spirits.Com, Inc. (12 NY3d 616 [2009]), the plaintiff City of New York sued out-of-state entities and persons engaged in the business of selling cigarettes over the Internet. The City alleged that the defendants’ websites allegedly misrepresented that their Internet cigarette sales were tax free, and that their customers did not have to pay cigarette taxes (id. at 620). The City argued that it was injured by the defendants’ deceptive acts “in an undetermined amount of unpaid cigarette taxes” (id.). The Court of Appeals concluded that the City lacked standing to assert an action premised on violation of section 349 since the City’s claimed *17 injury was “just as indirect as the insurer’s was in Blue Cross” (id. at 622).
In both Smokes-Spirits and Blue Cross, the Court reached its conclusion based on the finding that the injuries alleged by each of the plaintiffs were “entirely derivative of injuries . . . suffered by misled consumers” (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 622; see Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 207). Stated more generally, the Court concluded that a plaintiff lacks standing to bring an action pursuant to General Business Law § 349 (h) when the claimed loss “arises solely as a result of injuries sustained by another party” (Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 207).
Here, the plaintiffs alleged that they were directly injured by the Progressive defendants’ deceptive practices in that customers were misled into taking their vehicles from the plaintiffs to competing repair shops that participated in the DRP The allegedly deceptive conduct was specifically targeted at the plaintiffs and other independent shops in an effort to wrest away customers through false and misleading statements. The plaintiffs’ alleged injury did not require a subsequent consumer transaction; rather, it was sustained when customers were unfairly induced into taking their vehicles from the plaintiffs’ shop to a DRP shop regardless of whether the customers ultimately ever suffered pecuniary injury as a result of the Progressive defendants’ deception. The plaintiffs adequately alleged that as a result of this misleading conduct, they suffered direct business loss of customers resulting in damages of over $5 million (see M.V.B. Collision, Inc. v Allstate Ins. Co., 728 F Supp 2d 205, 217-218 [ED NY 2010]; cf. City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 622; Blue Cross & Blue Shield of N.J., Inc. v Philip Morris USA Inc., 3 NY3d at 207).
Affording a business standing to challenge deceptive conduct practiced in favor of a competing business is consistent with the legislative history of the 1980 amendments, which, as the Court of Appeals has repeatedly recognized, “supports] the position that business competitors have standing under the statute” (City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 624 n 3; see Mem of Atty Gen, Bill Jacket, L 1980, ch 346 [“It is also noted that a business itself will be able to use the private right of action against another business engaged in deceptive practices and thereby obtain increased legal protection”]; Special Comm on Consumer Affairs, Assn of Bar of City of NY, “Private *18 Right of Action” Proposals, Bill Jacket, L 1980, ch 346 [“permitting suits by either consumers or competitors . . . would help to police the marketplace against misrepresentations which constitute deception against the consumer and unfair competition with firms not engaging in such practices”]; Mem of Commissioner of Dept of Transp, Bill Jacket, L 1980, ch 346 [in a statement in support of the bill: “the businesses affected are in a position to protect their own interests,” thus “free[ing]” the Attorney General to protect “persons who are unable, by reason of financial or other circumstances to protect themselves”]; see also Richard A. Givens, Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, General Business Law § 349 at 565 [1988 ed] [“In addition to consumers, . . . competitors . . . are given the right to sue ... as an additional enforcement measure”]; cf. Restatement [Third] of Unfair Competition §§ 1 [a] [1]; 2 [permitting private action by competitors for deceptive marketing to prospective purchasers]).
The Progressive defendants nevertheless contend that to the extent that a business entity may have standing under section 349 (h), such standing should be limited to situations where the entity is acting as a consumer of goods or services (accord Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995]). There is some federal court dicta indicating that the statute “was not intended to be a ‘sword to be wielded in business-versus-business disputes . . . where the party asserting the claim is not acting in a consumer role’ ” (S.Q.K.F.C., Inc. v Bell Atl. TriCon Leasing Corp., 84 F3d 629, 636 [2d Cir 1996], quoting Richard A. Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, Overall Scope of General Business Law §§ 349-350, 1996 Pocket Part at 166, 167). This statement was made by the United States Court of Appeals for the Second Circuit in the context of its analysis as to whether the complaint adequately alleged consumer-oriented conduct—a distinctly separate element (see S.Q.K.F.C., Inc. v Bell Atl. TriCon Leasing Corp., 84 F3d at 636; cf. City of New York v Smokes-Spirits.Com, Inc., 12 NY3d at 623-624). In any event, the Second Circuit ultimately left that issue open and decided the appeal on alternative grounds (see S.Q.K.F.C., Inc. v Bell Atl. TriCon Leasing Corp., 84 F3d at 636).
Moreover, in a subsequent version of the Practice Commentaries cited by the Second Circuit, it is clear that the statement quoted is referring to specific types of business-versus-business disputes, not at issue in this case, such as those “over *19 intellectual property rights” including “trademark or trade dress infringement” (Richard A. Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, Overall Scope of General Business Law §§ 349-350, 2004 Pocket Part at 319, 322). The author, a former Regional Director of the Federal Trade Commission, went on to state that “business standing under §§ 349-350 can be recognized where a business is truly acting in the role of consumer ... or where deceptions harming consumers incidentally sideswipe rivals who are better funded and thus in a position to sue as private attorneys general to vindicate the consumer interest” (Richard A. Givens, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 19, Overall Scope of General Business Law §§ 349-350, 2004 Pocket Part at 319, 322 [emphasis added]).
Indeed, by conferring on an injured business competitor standing to challenge deceptive conduct practiced on the consumers in its market, the integrity of the market may be maintained by an entity which may have more funds, broader information, and more at stake in the market than any single individual consumer. Such private enforcement of this consumer protection statute is consistent with the purpose of the 1980 amendments inasmuch as it tends to ease the burden placed on the Attorney General by providing for alternative means of enforcing the substantive measures of consumer protection. So long as the allegedly deceptive conduct is sufficiently consumer-oriented, a business competitor protecting its own interest will ultimately serve to protect the interests of the consuming public.
Turning once more to the plain language of the statute, we note that the right to bring a private action was not limited to those acting in a consumer role, but rather, it was provided to “any person who has been injured by reason of any violation of this section” (General Business Law § 349 [h]). The complaint here alleged that the unlawful conduct diverted customers to competing businesses resulting in over $5 million in lost business. Inasmuch as we conclude that the plaintiffs have sufficiently alleged that they were directly injured by reason of conduct rendered unlawful by section 349 (a), we find no reason to judicially graft an additional requirement onto the statute so as to deprive them of standing based solely on their role in the consumer transaction. Accordingly, we hold that the allegation that the Progressive defendants’ deceptive practices diverted the plaintiffs’ customers to competing businesses resulting in *20 over $5 million in lost business sales constituted an allegation of a direct injury sufficient to confer standing upon the plaintiffs under General Business Law § 349 (h).
In sum, the Progressive defendants failed to establish, prima facie, their entitlement to judgment as a matter of law on the ground that the plaintiffs lacked standing by failing to adequately allege that they suffered a direct injury as a result of the allegedly deceptive act or practice. Accordingly, the Supreme Court properly denied that branch of the Progressive defendants’ motion which was for summary judgment dismissing the first cause of action.
III. Injurious Falsehood and Tortious Interference with Prospective Business Advantage
The Progressive defendants also contend that the Supreme Court erred in denying that branch of their motion which was for summary judgment dismissing so much of the sixth cause of action, which was to recover damages for injurious falsehood, as was based on allegations other than “category 1,” insofar as asserted against them. To establish a claim for injurious falsehood, a plaintiff must demonstrate that a defendant maliciously made false statements with the intent to harm the plaintiff, or recklessly and without regard to their consequences, and that a reasonably prudent person would have or should have anticipated that damage to the plaintiff would result (see Gilliam v Richard M. Greenspan, P.C., 17 AD3d 634, 635 [2005]).
The Progressive defendants established, prima facie, their entitlement to judgment as a matter of law dismissing the sixth cause of action in its entirety. However, in opposition, the plaintiffs raised triable issues of fact as to whether numerous false statements the Progressive defendants purportedly uttered to its claimants—communicating that the plaintiffs overcharged, did not do good work, and were a “bunch of crooks”—were made maliciously with the intent to harm the plaintiffs, or made recklessly and without regard to their consequences (see Liberman v Gelstein, 80 NY2d 429, 437 [1992]; Gilliam v Richard M. Greenspan, P.C., 17 AD3d at 635). Accordingly, the Supreme Court properly denied that branch of the Progressive defendants’ motion which was for summary judgment dismissing so much of the sixth cause of action as was based on allegations other than “category 1” insofar as asserted against them.
Finally, Stanton contends that the Supreme Court erred in denying that branch of his motion which was for summary judg *21 ment dismissing the fifth cause of action, which was to recover damages for tortious interference with prospective business advantage, insofar as asserted against him. To establish a claim for tortious interference with prospective business advantage, a plaintiff must demonstrate that “(a) the plaintiff had business relations with a third party; (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship” (Thome v Alexander & Louisa Colder Found., 70 AD3d 88, 108 [2009], citing Carvel Corp. v Noonan, 3 NY3d 182, 189-190 [2004]).
Here, Stanton established his prima facie entitlement to judgment as a matter of law by establishing that the plaintiffs did not sustain injury to their business relationship with a customer as a result of Stanton’s handling of a particular claim (see Carvel Corp. v Noonan, 3 NY3d at 189-190; Thome v Alexander & Louisa Colder Found., 70 AD3d at 108). In opposition, the plaintiffs failed to raise a triable issue of fact. Accordingly, the Supreme Court should have granted that branch of Stanton’s motion which was for summary judgment dismissing the fifth cause of action insofar as asserted against him (see Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Accordingly the appeal by Stanton from so much of the order as denied those branches of the motion of the Progressive defendants which were for summary judgment dismissing the first cause of action, and for summary judgment dismissing so much of the sixth cause of action as was based on allegations other than “category 1,” insofar as asserted against them is dismissed, as he is not aggrieved by those portions of the order. The appeal by the Progressive defendants from so much of the order as denied that branch of Stanton’s motion which was for summary judgment dismissing the fifth cause of action insofar as asserted against him is dismissed, as the Progressive defendants are not aggrieved by that portion of the order. The order is modified, on the law, by deleting the provision thereof denying that branch of Stanton’s motion which was for summary judgment dismissing the fifth cause of action insofar as asserted against him, and substituting therefor a provision granting that branch of the motion, and, as so modified, the order is affirmed insofar as reviewed.
Angiolillo, J.P., Belen and Lott, JJ., concur.
Ordered that the appeal by the defendant Nicholas Stanton from so much of the order as denied those branches of the mo *22 tion of the defendants Progressive Insurance Group Company, Progressive Northeast Insurance Company, Progressive Casualty Insurance Company, Progressive Direct Insurance Company, and Progressive Specialty Insurance Company which were for summary judgment dismissing the first cause of action, which was to recover damages for violation of General Business Law § 349, and for summary judgment dismissing so much of the sixth cause of action, which was to recover damages for injurious falsehood, as was based on allegations other than “category 1,” insofar as asserted against them is dismissed, as he is not aggrieved by those portions of the order (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144 [2010]); and it is further,
Ordered that the appeal by the defendants Progressive Insurance Group Company, Progressive Northeast Insurance Company, Progressive Casualty Insurance Company, Progressive Direct Insurance Company, and Progressive Specialty Insurance Company from so much of the order as denied that branch of the motion of the defendant Nicholas Stanton which was for summary judgment dismissing the fifth cause of action, which was to recover damages for tortious interference with prospective business advantage, insofar as asserted against him, is dismissed, as those defendants are not aggrieved by that portion of the order (see CPLR 5511; Mixon v TBV, Inc., 76 AD3d 144 [2010]); and it is further,
Ordered that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the defendant Nicholas Stanton which was for summary judgment dismissing the fifth cause of action, which was to recover damages for tortious interference with prospective business advantage, insofar as asserted against him, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as reviewed; and it is further,
Ordered that one bill of costs is awarded to the plaintiffs.